Pierrepont, J.
—-The sole question in this case relates to the plaintiff’s title to real estate in the city of Kew York, which is admitted to be good if a judgment, in partition, rendered in the Court of Common Pleas of the city and county of Kew York, in the year 1850, is valid.
Prior to the partition, the four infant children of John Ewen and wife had an interest in remainder in these lands (after their mother’s death), and the important question is whether they have been divested of that interest by the decree in partition ?
Many irregularities in those partition proceedings are complained of which need not here be considered; since a mere irregularity, which the Court may at any time correct, does not make the judgment void, and cannot now be reviewed in this collateral way.
A careful examination of the case discloses clearly and beyond all question, the following:
First. That the Court of Common Pleas in which the judgment was rendered had jurisdiction of the subject matter of the action. (2 R. S. 317, § 2; Stat. 1849, p. 701; Code, 1849.)
Second. That the lands being situate in the city of Kew York, and the parties residing there, and the defendants all having been personally served with the summons and complaint, the Court had jurisdiction both of the subject matter of the suit and of the parties to the action.
Third. That John Ewen, the father of the four infant children, was appointed the guardian ad litem, and filed the proper bond, and notice of that fact was served upon the plaintiff’s attorney, and that the summons and complaint in the partition suit were then served personally upon their said guardian, and upon each of the infants.
*429 Fourth. That the lands were partitioned among the several owners according to their respective rights, and final judgment in partition was signed, and the judgment roll was filed August 7th, 1850.
Fifth. That the lands in controversy were by said judgment in partition allotted to Wm. H. Ogilvie, from whom the plaintiff derives title; and that in order to confirm the title more effectually in said Ogilvie, John Ewen (for himself, and as guardian for his four infant children,) and all the other parties to the partition suit, joined in a deed of quitclaim to said Ogilvie, reciting the judgment of the Court of Common Pleas in partition, the appointment of the said guardian, &c.
This deed is dated Hovember 28, 1850.
The guardian did not enter any formal appearance, nor put in any answer for the infants, but all the defendants in that suit, suffered default"; and judgment as by default, was rendered that partition be made.
In accordance with that judgment, the parties entered into their respective estates, and there is no suggestion of fraud or deception of any kind, or of any injustice having been done to any one, in making the partition.
In July, 1857, and before the commencement of this action, a question having been made as to the propriety of a judgment against the infants by default; the guardian ad litem applied to the Court for leave to file his answer nunc pro tunc, as of the 21st of September, 1849, which application was granted and the answer was filed.
The guardian appears to have been aware of each and all of the proceedings in partition, and to have been watchful of the interests of the infants who were his own children, but seems not to have been aware that any answer was necessary, since there was no objection to the prayer of the complaint.
Ho question whatever is made of the good faith of the proceedings in partition, nor is there a suspicion that the infants have been defrauded; but the defendants insist that by reason of defects in the partition proceedings the judgment was invalid, and that the infants’ interests in these lands were not divested, and that, therefore, the plaintiff’s title is defective.
If the guardian had originally appeared and put in the same *430 answer which he was afterwards allowed to file, there seems to be no serious question that the plaintiff’s title would have been good; and such would have been the regular and proper course for the guardian to pursue.
In the absence of any authority, I can see no good reason to hold, that where the guardian ad litem, is properly before a Court which has jurisdiction of the subject matter, and of the parties to the suit, a decree in partition would be void, merely because the guardian confessed the truth of the complaint by suffering a default, instead of interposing a formal answer.
Section three of the statute relating to partition is in these words:
“§ 8. The guardians so appointed, and who shall give a bond as hereinafter directed, shall represent their respective minors in the proceedings for partition hereby authorized, and their acts in relation thereto shall be binding on such minors, and shall be as valid as if done by such minors after having arrived at full age.” (2 R. S., p. 317, § 3.)
In my judgment a fair construction of the statute cited, leaves no reasonable doubt that a judgment in partition may be valid without answer by the guardian. At any rate it was in this case but á defect which the Court had power to remedy and this they have done. (Croghan v. Livingston, 6 Abbott, 350.)*
We are to presume that the Court of Common Pleas in rendering their judgment have been as careful of the interest of the infants as any other Court would have been.
It is the duty of the Court to guard, with care, the interests of infants; but it often happens in this country that the only way to save any estate to infants is to make partition, and order sale of lands. Taxes, assessments, and other incumbrances will frequently eat up the infant’s entire estate, unless a part can be disposed of to protect the rest.
The Court will not compel a party to take a doubtful title. By a doubtful title, is meant, one about which the Court entertains a reasonable question grounded upon something which appears in the case. There is nothing appearing in this case which, in the opinion of the Court, can in any manner impair the validity of the title in question.
*431 We conclude that the judgment of the Court of Common Pleas is not void. That until reversed it is valid. That the plaintiff’s title is not bad by reason of any defects pointed out by the defendants’ counsel, and that the judgment should be reversed, and a judgment entered that the contract be specifically performed.
Bosworth, J.
—First. Was the appointment of John Ewen, as guardian of the four minors, regular; or if irregular, was it irregular merely, or coram non judice, and void?
Second. Does the omission of the guardian, (assuming his appointment not to be void,) to file an answer, affect the validity of the judgment?
Third. If it does, was the defect cured by the filing of an answer by the guardian, under the order authorizing it? The proper answer to these questions, will dispose of all points presented by the present appeal.
In considering the first of these questions, (as well as the last two,) it should be borne in mind that the .Court of Common Pleas for the city and county of Hew York, is a Court of general jurisdiction, within the common law meaning of that phrase. (Foot v. Stevens, 17 Wend., 483; Hart v. Seixas, 21 id., 40.)
Under all statutes passed by the legislature of the State of Hew York, giving power to its Courts to make partition of lands, that Court has had jurisdiction of proceedings for that purpose, when the land to be partitioned was situate in the city and county of Hew York. (Act of March 16, 1785; 1 vol. Laws of New York, Gr. ed., p. 165, § 1; 1 R. L., p. 507, § 1, and statutes cited in a note thereto; 2 R. S., 317, § 1.)
When the proceedings in question were commenced, and until after final judgment was rendered, the Code as amended by the act of April 11, 1849, was in force, (Laws of 1849, p. 613.) It was not again amended, until July 10, 1851, (Laws of 1851, p. 876), except in the single matter, found on the eighth page of the same volume.
By the Code, the powers of the Court of Common Pleas are as plenary in all actions of which it had jurisdiction, "as those of any other Court. It has jurisdiction of suits at law, and in equity, (the Court of Chancery having been abolished); and *432 under the Code, the mode of procedure in all Courts of record is the same.
The Code of 1849, (Laws of 1849, p. 701, § 448,) provides, that “theprovisions of the Revised Statutes relating to the partition of lands, tenements and hereditaments, held or possessed by joint tenants, or tenants in common, shall apply to actions for such partition brought under this act, so far as the same can be so applied to the substance and subject matter of the action, without regard to its form.”
By the provisions of the Revised Statutes, (2 R. S., 317, §§ 2 and 11), the guardian of minor defendants was to be appointed, before a petition for partition was served, on notice to their general guardian of an intention to apply for such an appointment.
If these provisions are made applicable to actions for partition under the Code, by section 448, of the Code of 1849; then the appointment was strictly regular, and was made in a manner authorized by statute law.
By the act of the 16th of March, 1785, (supra,) and which was the first act passed for the partition of lands under the state government, (1 R. L., p. 507, note*), no action of any Court was required to appoint commissioners to make partition except in a certain contingency. A party wishing partition to be made, appointed commissioners for the purpose, and advertised as prescribed by section 1, of the act of March 16, 1785; and if no objection was made to such commissioners; they proceeded to make partition. No guardians were appointed for infants, in the proceedings initiated according to section 1, of that act.
The provisions of sections 15 and 16 of that act, conform in substance, to the subsequent statutes in relation to the partition of lands, by proceedings in Court for that purpose; and provide for the appointment of guardians for minors. (§ 16.)
By sections 15 and 16 of that act, it would seem that the guardian ad litem might be appointed, after the petition for partition was presented.
Under the act of April 12, 1813, the Court was authorized to appoint guardians for minors, for any of the purposes intended by that act, “ before or after the commencement of any proceeding by virtue thereof,” (1 R. L., 511, § 8 ) and no previous notice *433 to the minor or his general guardian, of an intention to make, such an application to the Court was required.
Sections 2 and 3, of 2 Revised Statutes, 317, are in substance, the same as section 8, of 1 Revised Laws, 511, with the qualification that the former require notice of such application to be given to minors residing in the state, or to their general guardian. (Revisers’ Motes, 3 R. S., 710.)
That was done in the present case. The petition for the appointment, notice of presenting it, and an affidavit of due personal service of both, on the general guardian of the minors by delivering copies thereof “ to him personally,” are among the papers produced in evidence. The judgment roll contains the petition or a copy of it, and the order appointing John Ewen guardian, recites that it is made, on filing such petition, and satisfactory proof by affidavit, “ that due notice has been served on John Ewen, the general guardian of said minors, of an intention to apply to this Court ” for such order.
Under the Revised Statutes, therefore, the first proceeding was the appointment of a guardian for minors who were to be made defendants; the next was the service of a petition for partition on him, with notice of presenting the petition. The complaint and summons with service of them are, under the Code, a substitute for the petition and notice of presenting it and service of the latter two.
In the nature of things it is as proper and desirable that a guardian be appointed for minors before summons and complaint are served under the Code, as that one should havebeen appointed before service of a petition under the Revised Statutes.
Section 448, of the Code of 1849, authorizes such a practice. So, at all events, the Court of Common Pleas seem to have decided, in the case in question, and, as I think, correctly.
Rule 57, (of the Rules of 1849) which contains regulations for carrying into effect sections 115 and 116 of the Code relative to the appointment of guardians ad litem; by excluding from its operation the appointment of a guardian “ in a partition suit,” shows, as I think, that all the judges (who met on the 1st Wednesday of August, 1849, and made general rules of practice, under § 470, of the Code of 1849,) were of the opinion, that the *434 guardian in partition was to be appointed as the Eevised Sta-, tutes in that behalf had prescribed.
I, therefore, conclude, that the appointment of John Ewen as guardian was regular and valid. He gave, as guardian, such a. bond, and with such sureties, as the order appointing him and the Eevised Statutes required. The sureties justified, and were in due form approved by a judge of the Court. The bond thus executed and approved was filed with the clerk of the Court, on the 28th of August, 1849. These acts manifested, in an authen- ■ tic and satisfactory manner, the consent of John Ewen to act as such guardian, and expressed his acceptance of his appointment as guardian, and constituted notice to the Court of those- facts. He also gave notice of those facts, on the same day, to-the plaintiff. Thenceforth,- proceedings for a partition might be prosecuted, treating him as a legal and regularly appointed guardian.
The summons.and complaint, in the action, were served on him as such guardian. In proceeding under the Eevised Statutes, the petition and notice of-presenting -it (for which the former are substitutes )■ must have been served on the guardian, to operate as service of them on the minors. The service of the summons and complaint on the guardian is authorized by section 448 of the Code of 1849. The minors, by virtue thereof, .were regularly in Court, in an action of which the Court had jurisdiction, and in which it thereby acquired jurisdiction of the persons of the minors.
The minors were also severally, and personally, served with a copy of the summons and complaint.- This was a- sufficient service by the Code. It satisfied section 134, subdivision 2 of the Code, even if they were under the age of fourteen years; and if they viere over that age, then the service was clearly sufficient. (§ 134, sub. 4, id.) The proof made of the service satisfies the requirements of section. 138-. Any rules of Court, that require an affidavit of service to contain more particulars,, may affect questions of mere practice and regularity; but they cannot affect the jurisdictional competency of the Court to proceed in the action. Although the affidavit of service does not state all that rule (ninety of the Bales of 1849) requires; yet it nowhere appears that the service was not. in fact such as that rule requires the affidavit of the service should show it was.
*435 From the service of the summons the Court acquired jurisdiction of the action, and had control of all the subsequent proceedings. (Code of 1849, § 139; Laws of 1849, p. 644.)
Second. Does the omission of the guardian to file an answer affect the validity of the judgment 1
Section 3, of 2 Revised Statutes, 317, declares that guardians appointed and who shall give bond as they direct “shall represent their respective minors in the proceedings for partition hereby authorized; and their acts in relation thereto, shall be binding on such minors, and shall be as valid as if done by such minors after having arrived at full age." The Revised Statutes do not, in terms, require an answer. Sections 23 and 25 (§§ 22, 24,) contemplate a judgment by default. Rule 78 (of the Rules of 1849,) does not contemplate that a guardian must answer. This rule was in force when the summons and complaint were served, and continued in force until after judgment perfected. The usual answer in such a case, under the former practice was, that the minors by their guardian say “ that they are strangers to all and singular the matters and things in the complaint in these proceedings set forth, and that these defendants are respectively infants under the age of twenty-one years,, and claim such interest in the premises as they are respectively entitled to; and they submit their rights and interests in the matter in question to the protection of this honorable Court.” (Hoffman’s Ch’y Pr., Yol. 3, p. lxxiv, No. 94; Yol. 1, id., 233.) This does not give the Court much information. Such an answer is not authorized by section 149 of the Code of 1849.
Notwithstanding such an answer was put in; section 168 of the Code, if applicable to such a case, would authorize the plaintiff and the Court to- treat all the material allegations of the complaint, as true, (Laws of 1849, p. 649.) And Rule 78 (of the Rules of 1849,) authorizes such a reference as was made to Mr. Warner, “where the rights and interests of the several parties, as stated in the complaint, are not denied or controverted, if any of the defendants are infants, or absentees, or unknown.”
It is by such a reference that the Court protects the interests of infants. And Rule seventy-eight (of the Rules of 1849), like Rule seventy-eight (of the Rules of 1858), by omitting all allusion to the fact of an answer being put in by a guardian for minors, *436 imports that the judges, making the rules, did not think such an answer material. The practice as to answering, and upon failure to answer, was to be sought in the Code, when no contrary rule was prescribed by the Revised Statutes relative to partition.
The omission of the guardian to answer, after he has been regularly brought into Court by a personal service of the summons and complaint on him, is as much an “ act ” within the meaning of section 3 of 2 Revised Statutes, page 317, as the putting in of an answer which states that he knows nothing, and has nothing to say, except that he wishes the Court to protect the minors.
I think an omission to answer is not an omission in conflict with any duty imposed by the Revised Statutes; is authorized by the Code, and proper when the allegations of the Complaint are believed to be true (Code of 1849, §§ 149, 157), and is a case provided for by Rule 78 of the Rules of 1849.
In construing section 448 of the Code of 1849, the two concluding paragraphs of section 471, and the Code itself, it must he borne in mind that “the rule of common law, that statutes in derogation of that law are to be strictly construed, has no application to that act.” (The Code; Laws of 1849, p. 704, § 467.)
I think the judgment was not invalid, or ineffectual, merely because no answer was filed by the guardian of the minors.
3d. But, at most, the omission to answer affected only a question of mere practice; it did not render all proceedings subsequent to service of the summons and complaint coram non judice and void. The Code of 1849, § 173, declares that “ the Court may, at any time, in furtherance of justice,” do certain specified things, and “may likewise, in its discretion, allow an answer, . . to be made, or other act to be done after the time limited by this act.”
I think the legislature competent to vest such a power in the Courts, and that amendments made under the power thus granted are, until the order allowing them is reversed or otherwise annulled, as valid and efficient as if the acts done by force of such permission to amend had been first done within the regular time, as prescribed by the Code.
I speak, of course, of a case like the present (as it is unnecessary to go further), where the thing omitted is really a matter-of mere form, and the amendment allowed raises no new question, *437 nor presents any one that has been adjudicated, in any new or modified form.
The Code of 1849, section 176 (Laws of 1849r p. 651) declares that “ the Court shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.”
As it is found and not controverted, that the partition made was just and fair, and that the interest of each party was truly stated; it is a matter of no practical consequence to the minors whether their guardian omitted to put in an answer; or whether he had put in one stating that the complaint was true, (if he knew its allegations to be true); or denying that he had “ any knowledge thereof sufficient to form a belief”; or such a one as was put in, nunc pro tunc.
The provisions of the Revised Statutes, in relation to a writ of error upon any final judgment in' partition are, that error may be assigned “for any erroneous adjudication upon the rights of any of the respective defendants or respective plaintiffs,” &c. 2 R. S., 329, §§ 77 to 80, (§§ 75 to 79.)
Section 35 (§ 36), p. 322, declares that the “judgment shall be binding and conclusive, (1.) on all parties named therein, and their legal representatives who shall, at the time, have any interest in the premises divided, as owners in fee, or as tenants for years, or as entitled to the reversion, remainder or inheritance of such premises after the termination of any particular estate therein,” &c. The controlling effect of such a statutory provision, is strikingly illustrated by Vanderpoel v. Van Valkenburgh, (2 Seld., 190, 198 and 199.)
In addition to these views, it may be observed, that the proceedings cannot, now, be set aside for any irregularity in the progress of them. (2 R. S., 359, § 2.) Section 176, of the Code of 1849 (the law in force when the partition suit was commenced and judgment in it was rendered) prohibits a reversal, for any defect in the proceedings, which shall not affect the substantial rights of the adverse party.
The manuscript opinion furnished to us, in Croghan v. Livingston., (since reported in 17 N. Y. R., 218,) seems to me, to be *438 decisive upon the questions raised in this case. In perusing that opinion, and considering what is casually said of proceedings by petition, before the Code, in the common law courts, it should be borne in mind, that in actions for partition under the Code, the powers of the New York Common Pleas to amend; or do any other act in the cause, whether by way of amendment or otherwise, are as ample as those of the Supreme Court. As to actions of which both have a concurrent jurisdiction; the powers of either Court in respect to the proceedings in such action, are as extensive as those of the other, or those of the late Court of Chancery; and the same intendments will be made to support the judgment of the Court of Common Pleas, as of either of the others.
But the only defect is, (assuming the guardian to have been regularly appointed, and to have been before the Court as such) that the plaintiff proceeded to judgment before the guardian formally appeared and put in an answer. As the rights of the infants were truly stated in the complaint, (as it was amended) and as a fair partition was made, the minors have not been prejudiced in any substantial right.
The service of papers, made subsequent to the service of the summons and complaint, is said to be defective and worthless. If the provisions of the Code of 1849 regulate this matter, no service of any paper or proceeding in the ordinary course of the action, subsequent to service of the summons and complaint, was necessary, as no “ notice of appearance in the action ” was given, nor demurrer or answer was served by either defendant. (§ 414, Laws of 1849, p. 694.)
By 2 Revised Statutes, section 14, (§ 15,) page 319, affixing the notices “in the office of the clerk of the Court,” is made equivalent to personal service on the party to be affected thereby, and is expressly authorized, when a different service has not been specially directed.
It does not appear that service was not also made in that manner; and if held to be the appropriate mode; it will be presumed, in support of the judgment of a Court of general jurisdiction, to have been so made.
The phrase, “ so far as the same shall have appeared,” in sectional, (§ 23) 2 Revised Statutes, 321, and the phrase, “ so far as the *439 same have appeared,” contained in the judgment or decree, refers to the rights, titles and interests of the parties, and not to the parties themselves, as the respondents’ counsel erroneously supposes and contends. And the judgment or decree, states the rights and interests of the minors; they having been ascertained under the reference for that purpose.
It is only when, “ the part or interest of any parties who shall not have pleaded in the cause,” . . “in and to such premises, shall not have appeared by the evidence in the cause,” that section 24, (§ 25,) of 2 Revised Statutes, p. 321, requires that the “ Court shall give judgment that partition be made, so far as the rights or interests of the parties who are known, and have appeared in the said cause shall have been ascertained,” &c.
But in such a case, the parties whose rights have been ascertained, are to have partition, and an assignment to them of their ascertained proportion, and “the residue of the premises shall remain for the parties whose interests have not been ascertained,, subject to division between them at any future time.” (§§ 25, 26, 2 R. S., 321.)
The Court had power by the Revised. Statutes, to amend the complaint, in its statement of the interest of the parties. 2 Revised Statutes, 320, § 20. (sec. 19.)
Under the Code, which alone allows a party to proceed by action, the power to amend the complaint is unquestionable. (Code of 1849, §§ 169, 173, 176.)
• I think the complaint was erroneously dismissed, and that the judgment appealed from should be reversed. All the material facts are either admitted by the written stipulation of the parties or are established by record evidence, and a new trial, therefore, would seem to be unimportant to either party, and I understand is not desired by either.
Judgment should be entered, that the contract in question be specifically performed.
Hoffman, J., concurred.
Judgment accordingly.

 Since reported in 17 N. Y. R., 218.